IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| HOWARD BASS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0652 |
| | § | |
| TECHNIP USA CORP., TECHNIP, | § | |
| INC., and TECHNIP, S.A., | § | |
| | § | |
| Defendants. | § | |


**MEMORANDUM OPINION AND ORDER**


Pending before the court are (1) Defendant Technip Americas Corp.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) (Docket Entry No. 5), (2) Defendant Technip, S.A.'s Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket Entry No. 6), and (3) Defendant Technip's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) (Docket Entry No. 7). For the reasons discussed below the court will (1) treat Technip Americas Corp.'s motion to dismiss as a motion for summary judgment and grant summary judgment in Technip Americas Corp.'s favor, (2) deny Technip's 12(b)(6) motion to dismiss, and (3) deny Technip's motion to dismiss for lack of personal jurisdiction.

## I.  Background

Plaintiff, Howard Bass, brings this action against defendants, Technip USA Corp., Technip, Inc. ("Technip Americas"), and Technip, S.A. (or "Technip").  Plaintiff asserts that defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 et seq., by placing him on leave and terminating his employment due (at least in part) to his age. Plaintiff claims that defendants are also liable for civil conspiracy and tortious interference with employment.

Bass was an employee of defendant Technip USA in Houston, Texas.  He had commenced employment with a predecessor of Technip USA in March of 1963 and eventually became a mechanical design supervisor.  On October 30, 2002, at the age of 64, Bass was placed on leave.  He was terminated pursuant to what the company described as a reduction in force the following June.  He was 65 years old at the time of his termination.

Defendant Technip Americas is the parent company of Technip USA.  In 2001 Technip Americas had seven or eight employees who worked on projects for the company and also performed services for Technip USA.  Since the end of 2001 Technip Americas has had no employees and exists only as a holding company.  Technip Americas and Technip USA share the same office space and telephone number in Houston.

Defendant Technip, S.A. is the parent company of Technip Americas. Technip, S.A. is a French corporation that maintains its principal place of business in France. It claims to have no offices, agents, or employees based in the United States.

Plaintiff alleges that sometime in 2001 or 2002 Daniel Valot, CEO of Technip, S.A. and chairman of the board for both Technip, S.A. and Technip Americas, communicated to a gathering of employees in Houston that the "company" needed a "younger image."[1] Plaintiff contends that Valot followed the remark with the comment that "I'll probably be sued for age discrimination, but I have been before."[2] Plaintiff states that Larry Pope, President and CEO of Technip USA and a member of its board, identified the age of the workforce as a "'major problem'" at a meeting and was also quoted in an April 2002 memorandum speaking about the "'aging workforce.'"[3] Plaintiff alleges that the Technip companies are "engaged in an intentional

---

[1]It is not clear whether this communication was by video or in person. See Plaintiff's Original Petition at ¶ 13, attached to Defendants Technip, Technip Americas Corp., and Technip USA's Notice of Removal, Docket Entry No. 1; Deposition of Charles White at pp. 112-14, attached to Plaintiff's Response to Technip S.A.'s Rule 12(b)(2) & (6) Motions and Technip Americas Corp.'s Rule 12(b)(1) Motion ("Plaintiff's Response"), Docket Entry No. 13; Deposition of Steven M. Hansen at pp. 36-41, attached to Plaintiff's Response, Docket Entry No. 13.

[2]Affidavit of Howard Bass at ¶ 3, attached to Plaintiff's Response, Docket Entry No. 13.

[3]Id.

pattern and practice of terminating older employees, while retaining and or hiring substantially younger employees."[4]

## II.   **Defendant Technip America's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

### A.   **Standard of Review**

A claim may not be dismissed for lack of subject matter jurisdiction unless it appears certain that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 351 (5th Cir. 2003); Home Builders Ass'n v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).  A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate it.  Home Builders Ass'n, 143 F.3d at 1010.  A court may find lack of subject matter jurisdiction based on (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001); Clark v. Tarrant County, Texas, 798 F.2d 736, 741 (5th Cir. 1986).

The Fifth Circuit has instructed that "where issues of fact are central both to subject matter jurisdiction and the claim on

---

[4]Id. at ¶ 4.

-4-

the merits," a district court should "assume jurisdiction and proceed to the merits." Montez v. Dep't of Navy, 392 F.3d 147, 150 (5th Cir. 2004).  Because "no purpose is served by indirectly arguing the merits in the context of federal jurisdiction" when a jurisdictional challenge is also a challenge to the existence of a federal cause of action, a court must deal with the objection as a "direct attack on the merits of the plaintiff's case" under Rule 12(b)(6) (failure to state a claim upon which relief can be granted) or Rule 56 (summary judgment). Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir. 1981).  Thus, generally "a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action." Id. at 416.

Plaintiff asks the court to proceed as if Technip Americas' motion were for summary judgment.[5]  An order granting summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A "genuine" dispute over a fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A fact is

_____

[5]Plaintiff's Response, Docket Entry No. 13, pp. 14-15.

-5-

"material" if it "might affect the outcome of the suit under the governing law." Id. In considering a summary judgment motion the court is to resolve any doubts and draw any inferences in favor of the nonmoving party. Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001). But "in the absence of any proof" the court will not "assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands Ltd. v. Washington Capital DUS, Inc., 66 F.3d 89, 92 (5th Cir.), as modified, 70 F.3d 26 (5th Cir. 1995).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis in original) (quoting Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986)). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." Rizzo v. Children's World Learning Ctrs., Inc., 84 F.3d 758, 762 (5th Cir. 1996) (citing Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992)). If the moving party fails to meet this initial burden the motion must be denied, regardless of the nonmovant's response. Little, 37 F.3d at 1075.

If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and to show by

affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.   EEOC v. Texas Instruments Inc., 100 F.3d 1173, 1180 (5th Cir. 1996); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996).   The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence.   Wallace, 80 F.3d at 1047; Little, 37 F.3d at 1075.

## B.   Analysis

In its motion to dismiss defendant Technip Americas argues that the court lacks subject matter jurisdiction over the age discrimination claims plaintiff asserts against it.[6]   Technip Americas contends that it is not an "integrated enterprise" with Technip USA -- such that the two are treated as a single employer of plaintiff -- and that by itself Technip Americas does not meet the statutory definitions of "employer" under the TCHRA and the ADEA because it lacks the requisite number of employees.[7] Plaintiff responds that the two Technip companies should be considered a single employer, and he cites supporting evidence in

_____

[6]Defendant Technip Americas Corp.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, Docket Entry No. 5.

[7]Id. at 2-5.

-7-

the record.[8]  This dispute is the type of jurisdictional challenge
that must be considered as a direct attack on the merits of the
plaintiff's case.  Consistent with plaintiff's request,[9] the court
will assume jurisdiction and treat Technip America's motion to
dismiss as a motion for summary judgment.

In _Trevino v. Celanese Corp._, 701 F.2d 397 (5th Cir. 1983),
the Fifth Circuit noted that in civil rights cases the "rule has
emerged that superficially distinct entities may be exposed to
liability upon a finding that they represent a single, integrated
enterprise:  a single employer."  _Id._ at 404.  The court listed
several factors as relevant to the determination whether distinct
entities comprise an integrated enterprise:  (1) interrelation of
operations, (2) centralized control of labor relations and other
employment decisions, (3) common management, and (4) common owner-
ship or financial control.  _Id._; _see also_ _Lusk v. Foxmeyer Health
Corp._, 129 F.3d 773, 777 (5th Cir. 1997).  Of these, the second is
the main point of focus.  _Trevino_, 701 F.2d at 404.  Courts apply
the single employer rule in suits brought under both the ADEA and
the TCHRA.  _See_ _id._ at 403 n.9; _Schweitzer v. Advanced
Telemarketing Corp._, 104 F.3d 761, 762, 763-65 (5th Cir. 1997);
_Lusk_, 129 F.3d at 777; _Fields v. Teamsters Local Union No. 988_, 23

---

[8]Plaintiff's Response, Docket Entry No. 13, pp. 14-21.

[9]_Id._ at 14-15.

-8-

S.W.3d 517, 524-25 (Tex. App. -- Houston [1st Dist.] 2000, pet. denied).

In Lusk v. Foxmeyer Health Corp., 129 F.3d 773 (5th Cir. 1997), the Fifth Circuit considered whether a parent corporation and its subsidiary were a single employer under the ADEA. Id. at 777-81. The plaintiffs were former employees of the subsidiary. Id. at 775. After stating that it would apply the rule described above, the court added that the "analysis ultimately focuses on the question whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation" and that "all four factors are examined only as they bear on this precise issue." Id. at 777. The court indicated that a "strong presumption" exists that a parent corporation is not the employer of its subsidiary's employees, and "[o]nly evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary" -- such as "domination similar to that which justifies piercing the corporate veil" -- could overcome it. Id. at 778. Thus, the existence of common management and ownership -- and the "normal incidents" thereof, such as the parent's right to select directors and to set general policies -- does not alone justify treating a parent and its subsidiary as a single employer. Id. The court was clear that "[s]ome nexus to the subsidiary's daily employment decisions must be shown." Id.

-9-

In the present case the court is not persuaded that there was a significant interrelation of the two companies' operations.  In Lusk the Fifth Circuit instructed that this element of the single employer test "ultimately focuses on whether the parent corporation excessively influenced or interfered with the business operations of its subsidiary, that is, whether the parent *actually exercised* a degree of control beyond that found in the typical parent-subsidiary relationship."[10]  Id. (emphasis in original).  Plaintiff has not produced evidence showing that Technip Americas wielded any such authority over Technip USA or was otherwise closely involved in Technip USA's operations.  Plaintiff points out that the two companies share the same office space, telephone number, receptionist, and equipment.[11]  But Technip Americas is a holding company that has no employees and is not involved in any other business.[12]  Georges Lezaun, chief financial officer of Technip USA,

_____

[10]The court indicated that relevant factors suggesting the existence of interrelated operations include evidence that the parent (1) was involved directly in the subsidiary's daily decisions regarding production, distribution, marketing, and advertising, (2) shared employees, services, records, and equipment with the subsidiary, (3) commingled bank accounts, accounts receivable, inventories, and credit lines, (4) maintained the subsidiary's books, (5) issued the subsidiary's paychecks, or (6) prepared and filed the subsidiary's tax returns.  Lusk, 129 F.3d at 778.

[11]Plaintiff's Response, Docket Entry No. 13, p. 16 (citing Deposition of Georges Louis Lezaun, at pp. 15-16, attached to Plaintiff's Response, Docket Entry No. 13).

[12]Deposition of Georges Louis Lezaun, at pp. 16-17, attached to Plaintiff's Response, Docket Entry No. 13.

testified at his deposition that "I don't think anybody would call Technip Americas."[13]   By itself the shared office space and telephone number are not sufficient evidence of interrelated operations.  See id. at 780.

Plaintiff also argues that the two companies have shared employees.[14]  Prior to 2002 Technip Americas employed "seven or eight" people who, as part of their duties, also performed services for Technip USA.[15]  Because the adverse employment decisions underlying plaintiff's suit took place in October of 2002 and June of 2003, however, these facts are not relevant.  Evidence that Technip USA's attorney has done "minimum" work for Technip Americas and that certain employees of Technip USA can sign checks and wire transfers on behalf of Technip Americas to cover legal costs and taxes also does not persuade the court.[16]  Plaintiff does not explain how Technip Americas' use of a few Technip USA employees to perform these minor tasks represents anything more than an effort to avoid the unnecessary expense of having outsiders do it, much less how it evidences atypical or excessive meddling by Technip Americas in the daily operations of its subsidiary.[17]

_____

[13]Id. at p. 16.

[14]Plaintiff's Response, Docket Entry No. 13, pp. 16-17.

[15]Deposition of Georges Louis Lezaun at pp. 19-23, attached to Plaintiff's Response, Docket Entry No. 13.

[16]Id. at 28-29, 38.

[17]In connection with its interrelation of operations argument, plaintiff also argues that Technip, S.A. exercises
                                                      (continued...)

The balance of the evidence reflects that the operations of Technip Americas and Technip USA were not excessively interrelated. Technip Americas has loaned money to Technip USA and has not forgiven that debt.[18]  In an affidavit Lezaun stated that Technip Americas and Technip USA maintain "separate financial books, records, and accounts," although Technip Americas filed a "consolidated tax return that includes the activities of Technip USA and its other subsidiaries."[19]  He also stated that Technip Americas did not pay plaintiff's salary, withhold taxes, or provide benefits.[20]  These facts, which plaintiff has not controverted, indicate a respect for corporate formalities.

Plaintiff fails to present sufficient evidence under the second, and most significant, prong of the single employer test: centralized control of labor or employment decisions.  Again, plaintiff's reliance on evidence that before 2002 Technip Americas employed people who also performed services for Technip USA is

_____

[17](...continued)
financial control over Technip USA and requires that certain policies be followed.  Plaintiff's Response, Docket Entry No. 13, p. 17.  This is irrelevant to the question whether Technip Americas exercises undue influence over Technip USA.

[18]Deposition of Georges Louis Lezaun at pp. 35-36, attached to Plaintiff's Response, Docket Entry No. 13.

[19]Affidavit of Georges Louis Lezaun at ¶¶ 9-10, Exhibit A, attached to Defendant Technip Americas Corp.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, Docket Entry No. 5.

[20]Id. at ¶ 11.

misplaced.[21]  At the relevant times -- when plaintiff was placed on leave and ultimately terminated in late 2002 and in June of 2003 -- Technip Americas had for months been a holding company with no employees.[22]  Plaintiff emphasizes Daniel Valot's alleged remark that the company needed a younger image as evidence Technip Americas, for whom Valot served as chairman of the board, made the decision to terminate plaintiff.[23]  But plaintiff does not produce evidence that Valot made the remark in his capacity as chairman of the board for Technip Americas, rather than as CEO and chairman of Technip, S.A.  Georges Lezaun testified at his deposition that Technip, S.A. requires Technip USA to follow certain policies related to, for example, financing and risk management.[24]  Donald Vincent, Technip USA's vice-president of human resources, stated at his deposition that the parent company in France "determine[s] our finances, and they tell us what they expect out of us, and they are the people to whom you report, and they control us."[25]  The court

---

[21]See Plaintiff's Response, Docket Entry No. 13, pp. 18-19.

[22]Deposition of Georges Louis Lezaun at pp. 17, 19-23, attached to Plaintiff's Response, Docket Entry No. 13; Affidavit of Howard Bass at ¶ 2, attached to Plaintiff's Response, Docket Entry No. 13.

[23]Plaintiff's Response, Docket Entry No. 13, p. 19.

[24]Deposition of Georges Louis Lezaun at pp. 30-32, attached to Plaintiff's Response, Docket Entry No. 13.

[25]Deposition of Donald D. Vincent at p. 47, attached to Plaintiff's Response, Docket Entry No. 13.

has not found comparable evidence in the record suggesting that Technip Americas, a holding company with no employees, ever undertook such a role or otherwise set policies for Technip USA. Thus, the court cannot reasonably infer that Valot made the alleged remark as Technip Americas chairman.

Nor does plaintiff persuade the court that Valot's comments show that he was a final decision-maker in Technip USA's decision to terminate plaintiff's or anyone else's employment.   Even assuming the "younger image" remark was, as plaintiff contends, a "directive" to Technip USA to lower the age of its workforce,[26] this general statement of policy does not compare to actually "authoriz[ing] lay-offs, recalls, promotions and transfers" of the subsidiary's employees -- conduct undertaken by the defendant in <u>Trevino</u> where there was a genuine fact issue whether there was centralized control of labor decisions.   <u>Trevino</u>, 701 F.2d at 400, 404; <u>Lusk</u>, 129 F.3d at 781.   <u>See also</u> <u>Armbruster</u>, 711 F.2d at 1338-39 (concluding that there was substantial evidence of centralized control of labor where parent company personnel hired the subsidiary's plant manager, subsidiary asked parent company for approval to hire secretary, a "change notice" on a parent company form indicated reasons for secretary's later termination, and several of the subsidiary's employees were transferred to other

--------

[26]Plaintiff's Response, Docket Entry No. 13, p. 19.

-14-

subsidiaries of the parent); <u>Skidmore v. Precision Printing and Packaging, Inc.</u>, 188 F.3d 606, 617 (5th Cir. 1999) (finding error in lower court's failure to grant judgment as a matter of law to parent company in a Title VII case brought by employee of subsidiary where subsidiary "hired, fired, promoted, and demoted its own employees without consulting" parent and where there was no evidence that parent company participated in subsidiary's labor decisions or that the two companies intermingled management functions or operations).

As to the remaining elements of the single employer test, plaintiff fails to show any unusual aspect of common management and ownership. Plaintiff's reference to Technip America's pre-2002 organization is again misplaced, and the court is not convinced that Technip USA's borrowing of even substantial sums from Technip Americas represents any kind of significant departure from the ordinary parent-subsidiary relationship.[27]

As the Fifth Circuit instructed in <u>Lusk</u>, the court's task on summary judgment is to consider the "totality of the facts" in their full context, making only "reasonable, justifiable inferences from that evidence." <u>Lusk</u>, 129 F.3d at 779. The court concludes that plaintiff has not submitted proof that Technip Americas exerted the kind of "domination," excessive influence, or undue

---

[27]<u>Id.</u> at 19-20.

control over Technip USA that can rebut the strong presumption against a finding that the two companies are a single employer. See id. at 778.   Accordingly, Technip Americas is entitled to summary judgment.

### III.   Defendant Technip, S.A.'s Motion to Dismiss Pursuant to Rule 12(b)(6)

**A.   Standard of Review**

Motions to dismiss for failure to state a claim urged pursuant to Fed. R. Civ. P. 12(b)(6) should not be granted unless, based solely on the pleadings, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 78 S.Ct. 99, 102 (1957); Kapps v. Torch Offshore, Inc., 379 F.3d 207, 210 (5th Cir. 2004).   On a 12(b)(6) motion the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.   Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).   The court cannot look beyond the pleadings.   Id.   See also Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings include the complaint and any documents attached to it. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

The standards governing review of 12(b)(6) motions must be considered in light of the liberal pleading requirements of Fed. R. Civ. P. 8(a).   The Supreme Court has reminded lower courts that a

complaint need contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 998 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). The statement must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (quoting Conley, 78 S.Ct. at 103). This "simplified notice pleading standard" means that, with the exception of a limited set of cases,[28] a plaintiff need not plead facts supporting every element of his claims or legal theories. Id. See also Conley, 78 S.Ct. at 103. Instead, liberal discovery rules and summary judgment motions are relied upon "to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 122 S.Ct. at 998. Accordingly, motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. S. Christian Leadership Conference v. Sup. Ct. of La., 252 F.3d 781, 786 (5th Cir. 2001) (quoting Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir. 1988)).

Although notice pleading does not require a complaint to expound the facts, a plaintiff who does so is bound by such

---

[28]These exceptions are found in Rule 9(b), which provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

exposition.  Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998) (citing Jefferson v. Ambroz, 90 F.3d 1291, 1296 (7th Cir. 1996).  "[I]f a plaintiff chooses to 'plead particulars, and they show he has no claim, then he is out of luck -- he has pleaded himself out of court.'" Jefferson, 90 F.3d at 1296 (quoting Thomas v. Farley, 31 F.3d 557, 558-59 (7th Cir. 1994)).

**B.   Analysis**

In its motion to dismiss plaintiff's federal age discrimination claim, Technip, S.A. argues that it is exempt from ADEA liability "regardless of any finding of single or joint-employer status."[29]  Technip, S.A. relies on the ADEA provision that states "[t]he prohibitions of this section shall not apply where the employer is a foreign person not controlled by an American employer."[30]   29 U.S.C. § 623(h)(2).  Plaintiff responds that Technip, S.A. is subject to the ADEA because under a proper interpretation of § 623(h)(2) the ADEA applies to a foreign employer operating within the United States.[31]

---

[29]Defendant Technip's Motion to Dismiss Pursuant to Rule 12(b)(6), Docket Entry No. 6, pp. 3-4.

[30]Technip, S.A. claims to be a "foreign corporation not controlled by an American employer."  Defendant Technip's Motion to Dismiss Pursuant to Rule 12(b)(6), Docket Entry No. 6, p. 3.

[31]Plaintiff's Response, Docket Entry No. 13, pp. 21-24.

-18-

In <u>Morelli v. Cedel</u>, 141 F.3d 39 (2d Cir. 1998), the Second Circuit acknowledged that "[a]t a minimum, [§ 623(h)(2)] means that the ADEA does not apply to the *foreign* operations of foreign employers -- unless there is an American employer behind the scenes" and that "[a]n absolutely literal reading of [§ 623(h)(2)] might suggest that the ADEA also does not apply to the *domestic* operations of foreign employers." <u>Id.</u> at 42 (emphasis in original). But based on a thorough review of the legislative history, the court concluded that such a literal interpretation of the provision was not appropriate. Congress undertook in 1984 to expand the ADEA's reach to include Americans employed outside the United States by American employers, and in so doing amended the definition of employee to include any United States citizen employed by an employer in a workplace in a foreign country. <u>Id.</u> at 42-43. The Second Circuit concluded that § 623(h)(2), also added in 1984, "merely limits the scope of the amended definition of employee, so that an employee at a workplace in a foreign country is not protected under the ADEA if the employer is a foreign person not controlled by an American employer." <u>Id.</u> at 43. The court found no evidence that Congress intended to "restrict the application of the ADEA with respect to the *domestic* operations of foreign employers." <u>Id.</u> at 43 (emphasis in original). Foreign-employer exclusions in both Title VII and the Americans with Disabilities Act, which did not exempt a foreign employer's

-19-

domestic operations, also convinced the court that Congress did not exempt foreign employers operating within the United States' borders from coverage under the ADEA.[32]  Id.

The EEOC, which enforces the ADEA, agrees with the result reached in Morelli.  See id. at 44.  As the Third Circuit observed in Denty v. SmithKline Beecham Corp., 109 F.3d 147 (3d Cir. 1997), EEOC guidelines promulgated after the 1984 amendments reflect that "'the ADEA does not apply to foreign firms operating outside the United States, unless those firms are controlled by U.S. employers. On the other hand, the ADEA does apply to foreign firms operating on U.S. soil.'"  Id. at 151 (quoting EEOC Policy Guidance, N915.039 (March 3, 1989)).

In support of its position Technip, S.A. cites to Mochelle v. J. Walter Inc., 823 F.Supp. 1302 (M.D. La. 1993), a case that preceded Morelli.[33]  The Mochelle court stated that "a foreign [corporation] not controlled by an American employer" is

_____

[32]Additionally, the court reasoned that exempting domestic operations of foreign employers would "only undermine the purpose of the ADEA" and for no good reason:  "International comity does not require such an exemption; the 1984 amendments anticipate that American corporations operating abroad will be subject to foreign labor laws, and Congress presumably contemplated that the operations of foreign corporations here will be subject to U.S. labor laws."  See Morelli, 141 F.3d at 43.  The court also noted that "equal treatment" requires the application of the same anti-discrimination laws to American corporations and foreign corporations competing with them domestically.  See id. at 43-44.

[33]Defendant Technip's Motion to Dismiss Pursuant to Rule 12(b)(6), Docket Entry No. 6, p. 3.

"specifically excluded from ADEA liability by the express language
of § 623(h)(2)."  Id. at 1309.  However, the court did not rely
solely on § 623(h)(2) when it granted summary judgment for the
foreign defendant, and its interpretation of § 623(h)(2) was based
only on a literal reading of the provision -- the court's
conclusion was not accompanied by any of the reasoning or extensive
consideration of legislative history found in Morelli.  See id. at
1307-09.  Because this court concludes that Morelli is persuasive,
the court will apply the Morelli court's construction of
§ 623(h)(2), that the ADEA reaches the domestic operations of
foreign employers.

Plaintiff acknowledges that if the court adopts this reading
of § 623(h)(2), whether the ADEA applies to Technip, S.A. depends
on a conclusion that Technip, S.A. was an integrated enterprise
with Technip USA under the Trevino test.[34]  Plaintiff has pleaded
that Technip, S.A. and Technip USA form an integrated enterprise,[35]
and he argues in his response opposing dismissal that he has
"shown" that Technip, S.A. is "a joint employer and/or integrated

---

[34]See Plaintiff's Response, Docket Entry No. 13, p. 23.  If
Technip, S.A. formed an integrated enterprise with Technip USA,
then both companies were plaintiff's employer.  As plaintiff's
employer, Technip, S.A. would constitute a foreign corporation
operating within the United States.

[35]Plaintiff's Original Petition at ¶ 19, attached to
Defendants Technip, Technip Americas Corp., and Technip USA's
Notice of Removal, Docket Entry No. 1.

enterprise with Technip USA."[36]  But whether plaintiff has actually shown this, or could do so, is not an issue on this motion to dismiss, and the court has made no decision on the merits of plaintiff's position regarding the relationship between the two companies.   The court concludes only that plaintiff has a cognizable legal theory on which to proceed and that therefore defendant Technip, S.A.'s motion to dismiss under Rule 12(b)(6) must be denied.

## IV.   <u>Defendant Technip, S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(6)</u>

### A.   Standard of Review

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  <u>Wilson v. Belin</u>, 20 F.3d 644, 648 (5th Cir. 1994). The plaintiff can meet this burden by presenting a *prima facie* case that personal jurisdiction is proper.  <u>Id</u>.  To decide the issue the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  <u>Revell v. Lidov</u>, 317 F.3d 467, 469 (5th Cir. 2002). The court accepts the plaintiff's uncontroverted allegations as true and resolves factual conflicts in favor of the plaintiff.  <u>Id</u>.

---

[36]Plaintiff's Response, Docket Entry No. 13, p. 23.

"Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits." Submersible Systems, Inc. v. Perforadora Central, 249 F.3d 413, 418 (5th Cir. 2001) (citing Fed. R. Civ. P. 4(k)(1)). This means that for a district court to exercise personal jurisdiction over a nonresident defendant, (1) the defendant must be amenable to service of process under the forum state's long-arm statute, and (2) the assertion of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. Id. See also Electrosource, Inc. v. Horizon Battery Technologies, Ltd., 176 F.3d 867, 871 (5th Cir. 1999). It is well settled that Texas's long-arm statute reaches as far as federal due process requirements will allow. Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 418 (5th Cir. 1993) (citing Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990), Ham v. La Cienega Music Co., 4 F.3d 413, 415, 415 n.7 (5th Cir. 1993)). Therefore, the two steps become one in this analysis, and the court need only address whether subjecting the defendant to suit in Texas is consistent with the demands of due process.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

relations.'" <u>Burger King Corp. v. Rudzewicz</u>, 105 S.Ct. 2174, 2181 (1985) (quoting <u>International Shoe Co. v. Washington</u>, 66 S.Ct. 154, 160 (1945)). Thus, a district court may not exercise personal jurisdiction over a nonresident unless that nonresident's "'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" <u>Id.</u> at 2183 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 100 S.Ct. 559, 567 (1980)). This standard is met if the defendant has established "'minimum contacts'" in the forum that are more than just "'random,'" "'fortuitous,'" or "'attenuated.'" <u>Burger King</u>, 105 S.Ct. at 2183. In cases where the exercise of personal jurisdiction is proper, the nonresident has taken "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 78 S.Ct. 1228, 1240 (1958).

"Minimum contacts" can be established by showing contacts that give rise to either specific or general personal jurisdiction. Specific jurisdiction exists when the nonresident defendant's contacts arise from, or are directly related to, the cause of action. <u>Mink v. AAAA Development LLC</u>, 190 F.3d 333, 336 (5th Cir. 1999). General jurisdiction exists when a defendant's contacts with the forum state are "continuous, systematic, and substantial"

although unrelated to the cause of action.  Marathon Oil Co. v. A.G. Ruhrgas, 182 F.3d 291, 295 (5th Cir. 1999).

The Due Process Clause also requires that the exercise of personal jurisdiction not offend "'traditional notions of fair play and substantial justice.'"  International Shoe, 66 S.Ct. at 158. "Only if the nonresident defendant has sufficient minimum contacts with the forum state will the fairness of the exercise of personal jurisdiction be evaluated." Allred v. Moore & Peterson, 117 F.3d 278, 286 (5th Cir. 1997).  The burden rests with a defendant in those circumstances to make a "compelling case" against the assertion of jurisdiction. Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999); Burger King, 105 S.Ct. at 2185.

**B.  Analysis**

Technip, S.A. argues that it "does not have any purposeful contacts with the State of Texas, and in particular had no contact with Plaintiff Howard Bass, or with anyone responsible for the decision to terminate him."[37]  Plaintiff responds that this court has both specific and general jurisdiction over Technip, S.A.  He argues that Technip, S.A. CEO/Chairman Valot's alleged remarks to Technip USA employees about the need for a younger image establishes the former and that Technip, S.A.'s continuous and

---

[37]Defendant Technip's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), Docket Entry No. 7, p. 3.

systematic contacts with Texas through its control of Technip USA establishes the latter.[38]

In addition to the age discrimination claims, plaintiff asserts that Technip, S.A. is liable for civil conspiracy and tortious interference with employment.[39]   Under Texas law civil conspiracy is a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  Firestone Steel Products Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996).   The elements of tortious interference with employment include (1) the existence of an employment relationship subject to interference, (2) a willful and intentional act of interference, (3) proximate causation of injuries, and (4) actual damages or loss.  See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 688-89 (Tex. 1989); Prudential Ins. Co. of Am. v. Fin. Review Services, Inc., 29 S.W.3d 74, 77 (Tex. 2000).  Plaintiff contends that Valot's comments to Houston employees amounted to a "directive" to "terminate older employees and hire younger" and that "managerial employees at almost every level gave instructions or made remarks that evidenced the companies' participation in the plan."[40]   Plaintiff's tort claims are thus directly related to, or

---

[38]See Plaintiff's Response, Docket Entry No. 13, pp. 6-14.

[39]Plaintiff's Original Petition at ¶¶ 24-29, attached to Defendants Technip, Technip Americas Corp., and Technip USA's Notice of Removal, Docket Entry No. 1.

[40]Plaintiff's Response, Docket Entry No. 13, at pp. 8, 8
(continued...)

arise from, Valot's alleged remarks about the company needing a younger image.

In Calder v. Jones, 104 S.Ct. 1482 (1984), the Supreme Court held that due process permits a defendant to be subject to suit in a forum where the injury resulting from intentional and allegedly tortious actions is felt.   Id. at 1486-87.   The plaintiff, a California resident, had sued over an allegedly libelous story written and edited in Florida but circulated in her home state. Id.   The article concerned her activities in California and impugned her professional reputation there.   See id. at 1486.   The Court concluded that under these circumstances, the petitioners could reasonably anticipate having to answer for their actions in a California forum:  "An individual injured in California need not go to Florida to seek redress from persons who . . . knowingly cause the injury in California."   Id. at 1487.   As "primary participants in an alleged wrongdoing intentionally directed at a California resident," the petitioners had the requisite minimum contacts with the California forum.   Id.

Drawing on the Calder framework, the Fifth Circuit held in Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208 (5th Cir. 1999), that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."   Id. at 211-13.   "The defendant is

---

40(...continued)
n.5.

purposefully availing himself of 'the privilege of causing a consequence' in [the state]." Id. at 213.

Under the Calder analysis Valot's remarks are sufficient to bring Technip, S.A. within the jurisdiction of this court. The alleged injury of which plaintiff complains -- adverse employment actions based on his age -- occurred in Texas. Valot's remarks about the company needing a younger image were addressed to Technip USA employees and were heard by them in Houston, a place Valot visits once or twice a year to give updates on the state of the parent company and its other subsidiaries.[41] According to plaintiff, Valot added that "I'll probably be sued for age discrimination, but I have been before."[42] Valot's status as CEO and chairman of Technip, S.A., "ultimate parent company of both Technip Americas and Technip USA"[43] and maker of general policies the subsidiaries must follow,[44] may have influenced Technip USA to

---

[41]Deposition of Charles White at pp. 112-14, attached to Plaintiff's Response, Docket Entry No. 13; Deposition of Steven M. Hansen at pp. 36-41, attached to Plaintiff's Response, Docket Entry No. 13.; Affidavit of Georges Louis Lezaun at ¶ 6, Exhibit A, attached to Defendant Technip's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), Docket Entry No. 7.

[42]Affidavit of Howard Bass at ¶ 3, attached to Plaintiff's Response, Docket Entry No. 13.

[43]Affidavit of Georges Louis Lezaun at ¶ 4, Exhibit A, attached to Defendant Technip's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), Docket Entry No. 7.

[44]Deposition of Georges Louis Lezaun at pp. 30-32, attached to Plaintiff's Response, Docket Entry No. 13.

make age a factor in its employment decision regarding plaintiff. Under these circumstances Technip, S.A. could anticipate having to come to Texas to defend a suit such as the present one.

Technip, S.A. objects that Valot's comments are "indirect and ambiguous," thereby constituting "stray remarks" that have "no legal consequence."[45]  The stray remarks doctrine requires comments to be related to the protected class and closely connected to the relevant employment decision before the comments can be considered sufficient evidence of discrimination.  See Auguster v. Vermilion Parish School Bd., 249 F.3d 400, 405 (5th Cir. 2001).  After the Supreme Court's decision in Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097 (2000), however, the stray remarks doctrine is applied only in the absence of substantial evidence of discrimination:  as long as age-based remarks are not the only evidence of pretext, they are probative of an employer's discriminatory intent.  Palasota v. Haggar Clothing Co., 342 F.3d 569, 577 (5th Cir. 2003).  Thus, in this case Valot's remarks may carry legal consequences, depending on what additional evidence of discrimination the plaintiff is able to muster.

It is not this court's task here to decide this issue or to otherwise comment on the merits of plaintiff's claim.  Instead,

---

[45]Defendant Technip's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), Docket Entry No. 7, pp. 11-12.

"[i]n judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation,'" <u>Calder</u>, 104 S.Ct. at 1486, resolving all factual conflicts in the plaintiff's favor, <u>Wien Air Alaska, Inc.</u>, 195 F.3d at 211.  It is enough that plaintiff has provided some evidence that Technip, S.A. directed an act toward this forum that may have caused a tortious injury whose effects are felt here.[46]

Technip, S.A. fails to make a "compelling case" that the assertion of jurisdiction by this court offends fair play and substantial justice.  See <u>Burger King</u>, 105 S.Ct. at 2184-85.  This is the defendant's task "[o]nce it has been decided that [the defendant] purposefully established minimum contacts within the forum State." <u>Id.</u> at 2184.  But Technip, S.A. merely asserts that the court's assumption of jurisdiction would be unfair because it does not conduct business in Texas and has no activities here.[47] Technip, S.A. does not address the interests that courts balance in this inquiry:  the defendant's burden in having to litigate in the forum; the forum state's interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's

---

[46]Because the court is satisfied that Technip, S.A. has had contacts with the forum that give rise to specific jurisdiction, the court does not reach the question whether general jurisdiction exists.

[47]Defendant Technip's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), Docket Entry No. 7, p. 13.

interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies.  <u>Wien Air Alaska, Inc.</u>, 195 F.3d at 215.  The court concludes that the exercise of personal jurisdiction over Technip, S.A. is proper.

## V.  <u>Conclusions and Order</u>

For the reasons discussed above, the court treats Defendant Technip Americas Corp.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) (Docket Entry No. 5) as a motion for summary judgment on the issue of whether it and Technip USA are a single employer.  Because the court concludes that the two are not a single employer, Technip Americas Corp.'s motion is **GRANTED**.  The court is persuaded that the ADEA applies to foreign corporations operating within the United States and that defendant Technip, S.A. has established minimum contacts with this forum that are directly related to plaintiff's causes of action in tort.  Accordingly, Defendant Technip, S.A.'s Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket Entry No. 6) and Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) (Docket Entry No. 7) are **DENIED**.

**SIGNED** at Houston, Texas, on this the 6th day of May, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-31-